## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09-CR-0027-CVE** |
| | ) | |
| **DEANDRE LLOYD STARKS,** | ) | |
| **a/k/a/ "4-Trey,"** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is defendant's Motion to Suppress (Dkt. # 14).  Defendant asks the

Court to suppress any evidence seized during a search of his home on January 21, 2009.  He states

that police searched his home after obtaining a search warrant, but that the search warrant is invalid

due to a lack of probable cause.  He also asserts that the good faith exception does not apply because

the issuing magistrate wholly abandoned his judicial role.  The Court held an evidentiary hearing

on defendant's motion to suppress on April 28, 2009, at which the parties presented stipulations and

legal argument but called no witnesses.

## I.

Tulsa Police Department (TPD) Officer Antonia Hill presented an affidavit for search

warrant to Judge David Youll of the District Court of Tulsa County, Oklahoma on January 21, 2009,

requesting a search warrant for the house located at 12103 East 30th Place, Tulsa, Oklahoma.  Hill

stated that she received a tip from a reliable confidential informant (RCI) that marijuana was being

sold from this address by a black male known as "4-Trey."  Dkt. # 14-2 (Affidavit for Search

Warrant).  The RCI accompanied Hill to the location, and the RCI pointed to the house as the

location where 4-Trey sold marijuana. The RCI informed Hill that the RCI had personally observed large quantities of marijuana, packaged for sale, in the residence. While the affidavit is unclear as to whether the RCI purchased any marijuana, the RCI told Hill that 4-Trey stated that the RCI could return at a later date and "could purchase additional quantities of marijuana." Id. at 2. Hill stated that the RCI had previously provided truthful information on at least three occasions.

Hill stated that she conducted her own surveillance at the address and observed short-term traffic to and from the residence consistent with the sale and distribution of controlled substances. Hill contacted Laura Hanley, a deputy from the Tulsa County Sheriff's Office serving as a task force officer to the Gang Unit, and asked if Hanley was familiar with a person known as 4-Trey. Hanley stated that she was "very familiar" with 4-Trey and knew that his true name was Deandre Starks. Id. Hill obtained a photograph of Starks and showed it to the RCI. The RCI identified Starks as the person selling marijuana from the residence.

Judge Youll signed the search warrant at 9:34 a.m. on January 21, 2009. Dkt. # 14-3 (Search Warrant). The warrant authorized Hill to search for "**MARIJUANA [AND] INSTRUMENTALITIES USED IN THE SALE OF MARIJUANA . . . ,**" as well as firearms, ammunition, and proof of ownership and residency. Id. Hill requested a warrant authorizing a search for firearms because, based on her training and experience in prior investigations, "individuals [who use and sell controlled dangerous substances] often keep weapons and firearms to use for protection . . . ." Dkt. # 14-2, at 2.

Hill and other TPD officers executed the search warrant around 11:30 a.m. on January 21, 2009. As they approached the residence, officers saw a black Nissan Maxima leaving the residence and three men were inside the vehicle. Hill ordered TPD Officers Daniel Siebert and Steve

Castleberry and Corporal Brian Blair to conduct a traffic stop to determine if Starks were in the car. Officers discovered that Starks was in the vehicle and advised him of the search warrant for his residence. Starks agreed to cooperate and to admit the officers into his residence. Starks returned to his house with the officers and told them they would find what they were looking for in the living room closet. Officer Tim Wilson began to search the living room and opened the closet door. When he opened the closet door, he and Hill immediately smelled marijuana. Wilson found four baggies containing 122.63 grams of marijuana and an unloaded .38 caliber revolver. Officers searched Starks' person, and found $200 in cash in his wallet and a magazine-loaded .22 caliber pistol.

Officers continued to search the rest of the house and found other weapons and drug paraphernalia. Officer Woody Wolthius found a 7.62 x 39 mm caliber semi-automatic assault rifle and two magazines for the rifle in the attic. Dkt. # 15, Ex. 3, at 3 (Incident Report prepared by Hill). Officer Castleberry recovered a digital scale from the kitchen. Police found two letters addressed to Starks at the residence as proof of residence. Police also found an envelope in the master bedroom with markings that appeared to be handwritten notations concerning drug sales.

At the evidentiary hearing, the parties offered two stipulations: that the officers' testimony would be consistent with the police report as to the issue of evidence found "in plain view;" and that the affidavit for search warrant contained certain stock language used in other affidavits by TPD officers. However, the government did not stipulate that the use of stock language cast any doubt on the truthfulness of the affiant's statements.

## II.

Defendant argues that the affidavit in support of the search warrant does not state sufficient facts to support a finding of probable cause, and that the warrant authorizes a search for firearms when Hill lacked probable cause to believe that firearms would be present in defendant's residence. The government responds that the affidavit provides more than the mere suspicions or beliefs of a confidential informant, and Hill adequately corroborated the RCI's evidence before requesting a search warrant.

The Supreme Court has stated that probable cause is a "fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213 (1983). In the context of search warrants, the Tenth Circuit requires that a magistrate issuing a search warrant find that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001) (quoting Gates, 462 U.S. at 238). "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990). A magistrate may consider the affiant's experience as part of his probable cause determination. United States v. Soussi, 29 F.3d 565, 569 (10th Cir. 1994). When reviewing the search warrant affidavit, this Court must "interpret [the affidavit] in a common sense and realistic fashion." United States v. Grimmett, 439 F.3d 1263, 1270 (10th Cir. 2006). A reviewing court must show great deference to the magistrate's finding of probable cause and the magistrate's finding should be upheld if the magistrate had a "'substantial basis' for determining that probable cause existed." United States v. Perrine, 518 F.3d 1196, 1201 (10th Cir. 2008) (quoting United States v. Artez, 389 F.3d 1106, 1111 (10th Cir. 2004)).

4

Defendant argues that probable cause is based solely on the uncorroborated statements of the RCI, and that the magistrate issuing the search warrant erred by relying on this evidence as a basis to find probable cause.  He claims that the affidavit contains "scant" and "conclusory" factual allegations that are wholly insufficient to support a finding of probable cause.  Dkt. # 14, at 4. Specifically, defendant claims that the affidavit for search warrant does not quantify the amount or duration of short-term traffic Hill observed at the residence, and he asserts that it was necessary for police to conduct a controlled buy to confirm the RCI's statements that the RCI had observed marijuana "packaged for sale."  Id.  Defendant also challenges the RCI's credibility, because he reads the affidavit for search warrant to mean that the RCI has previously provided false or inaccurate information.

Defendant attempts to select individual facts from the affidavit and suggests that each fact, when viewed in isolation, does not support a finding of probable cause.  However, the Court must review the totality of the circumstances, not the facts in isolation, to determine if the magistrate issuing the warrant had a substantial basis to determine that probable cause existed.  Gates, 462 U.S. at 230-32.  The Court will treat defendant's arguments as a request to disregard certain evidence when reviewing the affidavit for probable cause.  This Court has previously stated that short-term traffic to and from a residence may be evidence of drug trafficking if corroborated by other evidence, and police are not required to quantify the amount of short-term traffic or take detailed notes for a court to consider this evidence as part of the probable cause analysis.  United States v. Gravitt, 2008 WL 4826316 (N.D. Okla. Oct. 31, 2008); see also United States v. Corral, 970 F.2d 719, 727 (10th Cir. 1992) (police surveillance showing an "unusually high volume of visitors briefly entering and leaving her residence" may be consistent with drug trafficking).  Hill's surveillance

revealed short-term traffic to and from defendant's residence and this corroborated other information in her possession. Even if this evidence is not as specific as defendant would like, evidence of short-term traffic is highly relevant to the probable cause analysis and should be considered. Defendant has not provided any authority suggesting that police were required to conduct a controlled buy before requesting a search warrant. While a controlled buy may be used as evidence to support a finding of probable cause and such evidence would assist in establishing the RCI's reliability, see Artez, 389 F.3d at 1111-12, the Court finds that police are not required to conduct a controlled buy when other evidence establishes probable cause for a search warrant. Therefore, the absence of a controlled buy does not invalidate the search warrant. Finally, defendant argues that the affidavit implies that the RCI has previously provided misleading information and, thus, the statements of the RCI should be disregarded. The affidavit states:

> Your affiant states that the RCI has provided information to your affiant that has always been truthful in nature. The RCI has never intentionally misled officers or provided information that has been false in nature. Your affiant states that the RCI has provided your affiant as well as other officers' [sic] reliable information no less than three different times. Your affiant states that this information has resulted in the seizure of various quantities of controlled dangerous substances. Your affiant states that the information provided to you affiant by the RCI has also ultimately resulted in the filing of criminal charges in Tulsa County District courts.

Dkt. # 14-2, at 2. Defendant claims that the RCI must have provided false information on a previous occasion, perhaps unintentionally, or there would be no reason for Hill to recite that the "RCI has never intentionally misled officers . . . ." Id. The parties have stipulated that the affidavit contains stock language that appears in other affidavits prepared by TPD officers, and the cited language is an example of such language. The most "common sense and realistic" interpretation of this language is that the RCI has previously provided truthful information, and the RCI has not misled officers or provided false information. See Grimmett, 439 F.3d at 1270. Defendant's assertion that

6

the RCI may have unintentionally provided false or misleading information takes the subject clause out of context, and the Court finds that the affidavit establishes that the RCI had previously provided information that has "always been truthful in nature." Id.

In this case, Hill did not rely solely on the uncorroborated statements of an RCI in requesting a search warrant, and she independently corroborated the RCI's statements before preparing an affidavit for search warrant. Within 72 hours of drafting the affidavit for search warrant, Hill received a tip that an RCI had observed marijuana "packaged for sale" at defendant's residence, and the person selling the drugs was known as "4-Trey." Dkt. # 14-2, at 1. After receiving this tip from the RCI, Hill asked the RCI to accompany her to the location and identify the house. Id. Hill gathered information about "4-Trey" as part of her investigation. She learned that 4-Trey was an alias for Starks and that members of a gang task force were "very familiar" with him. Id. at 2. Hill obtained a photograph of Starks from Hanley. She showed this photograph to the RCI and the RCI positively identified Starks as 4-Trey. Id. Hill independently conducted her own surveillance of Starks' residence and observed short-term traffic consistent with narcotics trafficking. Id. This evidence was more than sufficient to establish probable cause to obtain a search warrant for Starks's residence and Hill had no obligation to conduct further investigation before seeking a search warrant.

Firearms are commonly regarded as a "tool[] of the drug trade" and, based on the evidence provided by the RCI and Hill's experience and training, Hill reasonably included in the search

warrant a listing of firearms and ammunition as specific items to be seized.[1]  See United States v. Winder, 557 F.3d 1129 (10th Cir. 2009); United States v. Maddox, 388 F.3d 1356, 1366 n.6 (10th Cir. 2004) (it is reasonable for police to "suspect that 'drug dealers commonly keep firearms on their premises as tools of the trade'"); United States v. Nicholson, 983 F.2d 983 (10th Cir. 1993) ("Drug traffickers may carry weapons to protect their merchandise, their cash receipts, and to intimidate prospective purchasers).  The RCI provided information that marijuana was "packaged for sale" at defendant's residence and this suggested to Hill that defendant was engaged in the sale and distribution of narcotics.  Hill's affidavit for search warrant states that she has been a TPD officer for 13 years and she has received training as a narcotics investigator.  Dkt. # 14-2, at 1.  The affidavit for search warrant states that drug dealers "often keep weapons and firearms to use for protection . . ." and, based on her experience and established law, she could reasonably expect that a suspected drug dealer would possess a firearm to protect himself and his narcotics.  While it may not be appropriate to include a request to search for firearms in every search warrant for illegal drugs, Hill had a substantial basis to believe that defendant was selling drugs from his home and,

---

[1]      It is not clear that Hill was required to list firearms as a specific item on the search warrant. Tenth Circuit precedent establishes that firearms are a "tool of the trade" for drug traffickers and the warrant authorizes police to search for "instrumentalities used in the sale of marijuana."  Dkt. # 14-3, at 1.  Thus, firearms could reasonably be construed as an instrumentality in this case, because Hill had information that defendant was engaged in drug trafficking, as compared to simple possession of narcotics, and firearms may constitute an instrumentality of the suspected offense.  However, the Court will consider defendant's argument that Hill did not establish probable cause to search for firearms separately from probable cause to search for marijuana.

combined with her training and experience, this provided enough information for Hill to also list firearms as a specific item in the search warrant.[2]

The government argues that Hill relied on the warrant in good faith and, even if a Fourth Amendment violation occurred, no evidence seized during the January 21, 2009 search should be suppressed.  There is a presumption that an officer relying on a warrant is acting in good faith and, although this presumption is not absolute, it "must carry some weight" with the Court.  United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993).  When an officer relies on a warrant issued by a neutral magistrate, the good faith rule should apply unless the "the underlying documents are 'devoid of factual support'" or the officer's reliance on the warrant was "wholly unwarranted."  Id.

The good faith exception applies when "'an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even though the search warrant was later deemed to be invalid."  United States v. Herrera, 444 F.3d 1238, 1249 (10th Cir. 2006) (quoting United States v. Leon, 468 U.S. 897, 920 (1984)).  Excluding evidence obtained by police in good faith reliance on a search warrant would not deter future police misconduct and

---

[2]     Although the government argues that the plain view doctrine applies, the government's argument is more appropriately characterized as an argument that police were authorized to search for drugs, and that the firearms would have inevitably been discovered during the search of the house or defendant's person.  "The inevitable discovery doctrine provides an exception to the exclusionary rule and permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it."  United States v. Martinez, 512 F.3d 1268, 1273 (10th Cir.2008) (quoting United States v. Cunningham, 413 F.3d 1199, 1203 (10th Cir.2005)).  The Court does not need to reach the issue of plain view or inevitable discovery, because the search warrant was valid in all respects.  However, even if the Court were to find that Hill did not have probable cause to include firearms in the search warrant, the Court notes that the inevitable discovery doctrine would apply, and any firearms would have been lawfully seized during the execution of search warrant.

would penalize police for a magistrate's error in issuing the warrant. <u>Leon</u>, 468 U.S. at 920-21.  In

<u>Leon</u>, the Supreme Court identified four exceptions to the good faith rule.  If a warrant is invalid,

the good faith rule does not prevent exclusion of evidence (1) "if the magistrate or judge issuing a

warrant was misled by information in an affidavit that the affiant knew was false or would have

known was false except for his reckless disregard of the truth;" (2) "where the magistrate wholly

abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319

(1979);" (3) in circumstances that "no reasonably well trained officer should rely on the warrant;"

and (4) if a police officer relies on a warrant "so lacking in indicia of probable cause as to render

official belief in its existence entirely unreasonable." <u>Id</u>. at 922-23.  The good faith exception also

does not apply if police improperly execute a warrant.  The good faith exception to the exclusionary

rule is intended to prevent the exclusion of evidence when a neutral third party has committed an

error, but the good faith rule does not excuse police error in exceeding the scope of a search warrant

or failing to comply with other terms of the warrant.  <u>United States v. Angelos</u>, 433 F.3d 738 (10th

Cir. 2006).

Defendant argues that the good faith exception does not apply because the issuing magistrate

wholly abandoned his judicial role by signing a warrant obviously lacking probable cause.

Defendant's argument that the issuing magistrate wholly abandoned his judicial role is misplaced

and this exception to the good faith rule does not apply.  This exception applies only when the

magistrate acts outside of his or her judicial capacity, not when the magistrate simply erred by

executing a warrant lacking in probable cause.  <u>See</u> <u>Lo-Ji Sales, Inc. v. New York</u>, 442 U.S. 319

(1979) (magistrate abandons his neutral and detached role as judicial officer by participating in

execution of search warrant); <u>United States v. Martin</u>, 297 F.3d 1308 (11th Cir. 2002) (even though

an affidavit for search warrant did not state sufficient facts to support a finding of probable cause, there was no evidence suggesting that the issuing magistrate acted outside of his judicial role and the <u>Lo-Ji</u> exception to good faith rule did not apply).  Defendant also argues that the good faith exception does not apply because the warrant was so lacking in indicia of probable cause that no reasonable police officer would have relied on it.  Considering the Court's finding that probable cause existed, this argument is meritless and Hill reasonably relied on the warrant as a basis to search defendant's home.[3]

Defendant's motion to suppress should be denied.  The affidavit for search warrant clearly provides probable cause to believe that defendant was distributing marijuana from his residence and, even if there were some doubt as to probable cause, the good faith exception would apply.

**IT IS THEREFORE ORDERED** that Motion to Suppress (Dkt. # 14) is **denied**.

**DATED** this 28th day of April, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] At the evidentiary hearing, defendant argued that the Court should not follow <u>Leon</u>, because <u>Leon</u> allows the Court to uphold a search warrant that is facially invalid and was issued in violation of defendant's Fourth Amendment rights.  However, <u>Leon</u> is clearly good law and the Court is bound to apply <u>Leon</u> unless it is expressly overruled by the Supreme Court.  The Court notes this argument simply to preserve defendant's right to appeal all issues raised in his motion to suppress and at the suppression hearing.